Sealed

Public and unofficial staff access to this Instrument are prohibited by court order.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States District Court
Southern District of Texas
FILED

DEC 11 2013

David J. Bradley, Clerk of Court

| UNITED STATES OF AMERICA | § | Criminal No. **13CR 746** |
|---|---|---|
| v. | § | |
| | § | UNDER SEAL |
| SHARON IGLEHART, MD, | § | |
| | § | UNSEALED |
| Defendant. | § | PER ARREST |
| | § | 12/17/13 |

### INDICTMENT

The Grand Jury charges:

### General Allegations

At all times material to this Indictment, unless otherwise specified:

1. The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Medicare was a "healthcare benefit program" as defined by Title 18, United States Code, Section 24(b).

2. Medicare was subdivided into multiple Parts. Medicare Part B covered partial hospitalization programs ("PHPs") connected with the treatment of mental illness. The treatment program of PHPs closely resembled that of a highly structured hospital inpatient program, but it was a distinct and organized intensive treatment program that offered less than 24-hour daily care.

3. Patients eligible for Medicare coverage of a PHP comprised two groups: (1) those patients who were discharged from an inpatient hospital treatment program, and the PHP

was in lieu of continued inpatient treatment and (2) those patients who, in the absence of partial hospitalization, would require inpatient hospitalization.

4. Medicare guidelines required that patients admitted to a PHP required PHP services at levels of intensity and frequency comparable to patients in an inpatient setting for similar psychiatric illnesses.

5. Medicare guidelines required that patients admitted to a PHP be under the care of a physician who was knowledgeable about the patient and certified the patient's need for partial hospitalization.

6. Medicare guidelines required that upon admission, a physician certify that the patient admitted to the PHP would require inpatient psychiatric hospitalization if the partial hospitalization services were not provided, that the services were furnished while the individual was under the care of a physician, and that the services were furnished under an individualized written plan of care.

7. Under the PHP benefit, Medicare covered the following services: (1) individual and group psychotherapy with physicians, psychologists or other mental health professionals; (2) occupational therapy requiring the skills of a qualified occupational therapist; (3) services of social workers, trained psychiatric nurses and other staff trained to work with psychiatric patients; (4) drugs and biologicals furnished for therapeutic purposes that could not be self-administered; (5) individualized activity therapies that were not primarily recreational or diversionary; (6) family counseling services for which the primary purpose was the treatment of the patient's condition; (7) patient education programs where the educational activities were closely related to the care and treatment of the patient; and (8) diagnostic services.

8. Medicare guidelines specifically excluded meals and transportation from coverage under the PHP benefit.

9. Medicare did not cover programs providing primarily social, recreational or diversionary activities. Medicare excluded from coverage programs attempting to maintain psychiatric wellness and treatment of chronic conditions without acute exacerbation. Psychosocial programs that provided only a structured environment, socialization or vocational rehabilitation were not covered by Medicare.

10. Medicare required that the PHP was provided at a facility that was hospital based or hospital affiliated or at a community mental health center.

11. Individuals who qualified for Medicare benefits were commonly referred to as Medicare "beneficiaries." Each beneficiary was given a Medicare identification number.

12. Hospitals, physicians and other healthcare providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A healthcare provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

13. Medicare paid hospitals and other healthcare providers for services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

14. CMS contracted with Medicare Administrative Contractors ("MACs") to process claims for payment. The MAC that processed and paid Medicare Part B claims for PHP services in Texas was TrailBlazer Health Enterprises, LLC ("TrailBlazer").

15. To bill Medicare for services rendered, a provider submitted a claim form (Form 1500) to TrailBlazer. When a Form 1500 was submitted, usually in electronic form, the provider certified that: (1) the contents of the form were true, correct and complete; (2) the form was prepared in compliance with the laws and regulations governing Medicare; and (3) the contents of the claim were medically necessary.

16. A Medicare claim for PHP reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the item or service provided to the beneficiary, the date the item or service was provided, the cost of the item or service, and the name and unique physician identification number of the physician who prescribed or ordered the item or service.

17. A Houston hospital ("the Hospital") was a Texas non-profit entity doing business in and around Houston, Texas. The Hospital billed Medicare for PHP services purportedly provided at the Hospital locations and for services purportedly provided by independent contractors at satellite locations.

18. Defendant **SHARON IGLEHART, MD**, a resident of Harris County, Texas, was a Medical Doctor who admitted patients to the Hospital's PHPs.

## COUNT 1
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

19. Paragraphs 1 through 18 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

20. From in or around December 2005, through in or about May 2012, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, defendant,

**SHARON IGLEHART, MD,**

did knowingly and willfully combine, conspire, confederate and agree with others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said healthcare benefit program, in connection with the delivery of and payment for healthcare benefits, items and services.

### Purpose of the Conspiracy

21. It was a purpose and object of the conspiracy for **SHARON IGLEHART, MD**, and her co-conspirators, to unlawfully enrich themselves by, among other things: (a) submitting false and fraudulent claims to Medicare through the Hospital for services that were medically unnecessary, services that were not eligible for Medicare reimbursement, and services that were not provided; (b) concealing the submission of false and fraudulent claims to Medicare; and (c) diverting proceeds of the fraud for the personal use and benefit of the defendant and her co-conspirators.

### Manner and Means of the Conspiracy

The manner and means by which the defendant and her co-conspirators sought to accomplish the purpose and object of the conspiracy included, among other things:

22. The Hospital would maintain a Medicare provider number that the defendant and her co-conspirators would use to submit and cause to be submitted claims to Medicare for PHP services that were not medically necessary and for PHP services that were not provided.

23. **SHARON IGLEHART, MD** would act as the attending physician for patients at the Hospital's PHPs and would sign patient treatment documents authorizing medically unnecessary treatment for patients who were not eligible for PHP treatment.

24. **SHARON IGLEHART, MD** would sign patient treatment documents stating that patients needed PHP treatment even though the services provided by the Hospital did not qualify as PHP services.

25. **SHARON IGLEHART, MD** would authorize the Hospital to bill Medicare listing her as an attending physician to make the fraudulent claims appear legitimate.

26. **SHARON IGLEHART, MD** would individually submit and cause to be submitted claims to Medicare using her own Medicare provider number for services she purportedly provided to patients who attended the Hospital's PHPs.

27. **SHARON IGLEHART, MD** and her co-conspirators would submit and cause to be submitted approximately $158 million in claims to Medicare for PHP services purportedly provided by the Hospital.

28. **SHARON IGLEHART, MD**, and her co-conspirators would cause the transfer and disbursement of illicit proceeds derived from the fraudulent billing scheme to themselves and others.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-5
## Health Care Fraud
## (18 U.S.C. §§ 1347 and 2)

29. Paragraphs 1 through 18 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

### The Scheme to Defraud

30. From in or about December 2005 through at least May 2012, in the Houston Division of the Southern District of Texas, and elsewhere, defendant,

### SHARON IGLEHART, MD,

aiding and abetting others known and unknown to the Grand Jury, in connection with the delivery of an payment for healthcare benefits, items and services, did knowingly and willfully execute and attempt to execute, a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations and promises, money and property owned by and under the custody and control of Medicare.

### Manner and Means of the Scheme to Defraud

31. Paragraphs 22 through 28 of this Indictment are realleged and incorporated as if fully set forth herein.

### Execution of the Scheme to Defraud

32. On or about the dates set forth in the Counts below, defendant, **SHARON IGLEHART, MD**, aiding and abetting others, did knowingly and willfully execute and attempt to execute the aforesaid scheme and artifice to defraud by submitting and causing to be submission to Medicare the false and fraudulent claims set forth in the Counts below:

7

| Count | Medicare Beneficiary | Medicare Claim Number | Approx. Dates of Services | Description of Services Billed | Approx. Amount of Claim |
|---|---|---|---|---|---|
| 2 | R.Y. | 20712400686004 | April 9-14, 2007 | Individual Psychotherapy; Group Psychotherapy; Training and Education | $3,950 |
| 3 | L.J. | 21207602413907 TXA | February 20-24, 2012 | Group Psychotherapy; Training and Education | $2,500 |
| 4 | M.B. | 21207602413707 TXA | February 20-24, 2012 | Group Psychotherapy; Training and Education | $2,000 |
| 5 | T.A. | 21209600956207 TXA | March 5-8, 2012 | Group Psychotherapy; Training and Education | $1,500 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. §§ 982(a)(7), 981(a)(1)(C), and 28 U.S.C. § 2461)

33. Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to the defendant **SHARON IGLEHART, MD** that, in the event of conviction for any of the violations charged in Counts One through Five of the Indictment, the United States intends to forfeit all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of any such offense, including, but not limited to, a money judgment in the amount of at least $5,087,823.56 in United States currency, for which the defendant and her co-conspirators may be jointly and severally liable.

34. In the event that the property subject to forfeiture as a result of any act or omission of the defendant:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461.

A TRUE BILL

Original Signature on File

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

*[signature]*
LAURA M.K. CORDOVA
ASSISTANT CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE